IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL R. GRAHAM, LL-7560, )
    Petitioner, )
     )
    v. ) 2:18-cv-1411
     )
MICHAEL CLARK, et al., )
    Respondents. )

Memorandum Opinion and Order

Mitchell, M.J.:

    Paul R. Graham, an inmate at the State Correctional Institution-Albion has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and a certificate of appealability will be denied.

    Graham was originally sentenced on December 16, 2013 to a 142 to 284 year period of incarceration following his conviction by a jury of rape, involuntary deviate sexual intercourse, aggravated indecent assault, statutory sexual assault, indecent assault, and corruption of the morals of minors at CP-63-CR-1468-2012 in the Court of Common Pleas of Washington County, Pennsylvania. On March 12, 2014, the trial court resentenced him to a 125 to 250 years sentence.[1]

    An appeal was filed in the Superior Court in which the issues presented were:

> 1. Did [the Commonwealth] present sufficient evidence, as a matter of law, for each of the counts for which [Appellant] was convicted?
>
> 2. Does the weight of the evidence require that the verdict on said count be reversed and stricken?;
>
> 3. Did the trial court err in sentencing by modifying its original sentence by imposing mandatory minimum sentences?; and

---

[1] For years we have endured the inconsiderate and inappropriate answers to habeas corpus petitions arising out of convictions secured in Washington County, Pennsylvania which at best produces an unindexed collection of documents or state court records requiring the court to devote an inordinate amount of time to delving through those records in order to make a determination of which documents are relevant. For this reason, we are unable to cite to any specific exhibit identification.

> 4. Did the trial court abuse its discretion in sentencing [Appellant] to a term of a total of 125 to 250 years.

In a Memorandum filed on June 16, 2015, the conviction was affirmed but the matter was remanded for resentencing. As a result, on July 28, 2015 the sentence was reduced to 46 to 92 years. A direct appeal was not pursued.

On September 24, 2015, Graham filed a post-conviction petition. The latter was dismissed on July 21, 2016 and a timely notice of appeal was filed in which the issues raised were:

> 1. Failure of trial counsel [to] investigate and prepare a defense.
>
> 2. Failure of trial counsel to object to the prosecutor's argument, remarks and alleged expert opinion during her opening statement and closing argument. (Superior Court Memorandum of 10/12/2017 at p.7).

On October 12, 2017, the Superior Court affirmed the denial of post-conviction relief. Specifically writing, "We conclude that President Judge Emery's opinion, entered on December 27, 2016, meticulously and accurately disposes of Appellant's meritless claims on appeal. Therefore, we affirm on the basis of President Judge Emery's thorough opinion and adopt it as our own." (Id.) No appeal was pursued.

The instant petition was received on October 22, 2018. In his petition Graham contends he is entitled to relief on the following grounds:

> I. Trial Counsel's failure to prepare and present a defense resulted in petitioner's wrongful conviction for crimes he is actually innocent of.
>
> II. Petitioner was denied due process of law and a fair trial by trial counsel's failure to conduct a proper cross-examination of the Commonwealth's sole inculpatory witness.
>
> III. Failure of trial counsel to object to the prosecutor's misconduct and abuse of discretion by the trial court were plain error warranting an objection and motion for a mistrial.

The factual background to this prosecution is set forth in the October 12, 2017 Memorandum of the Superior Court which cited the trial court's opinion:

> A two-day jury trial began on September 16, 2013…

At trial, the Commonwealth offered the testimony of the victim, her mother, and the arresting officer.

At the time of the trial, the victim was [19] years old. [Appellant] married the victim's aunt when the victim was approximately nine years old. The victim's and Appellant's families were close, and [Appellant] acted as the victim's babysitter while her parents worked. [Appellant] babysat the victim and her brother "pretty much every day." Sometimes she would stay the night at [Appellant's] residence and he would assist her with getting ready for school the next morning. The victim enjoyed spending time with her uncle, because he would play games with her and "pretty much did whatever [the victim] wanted to do all the time."

However, in February [] 2003, when the victim was nine years old, [Appellant] began to sexually abuse the child. While wrestling, the victim stuck her tongue out at [Appellant], and he warned her not to do it again. When she did, [Appellant] licked the inside of the victim's mouth and her tongue. In another episode, [Appellant] stuck his fingers in the victim's mouth and made her suck on them. He also made the victim lift up her shirt while he touched and licked her nipples. Similar events happened multiple times.

[Appellant's] family eventually moved into the victim's prior home, while the victim and her family resided three blocks away. The victim was close to ten years old at the time. The two residences were in walking distance of each other, and [Appellant] continued to babysit the victim.

The two often spent time in [Appellant's] bedroom. The victim testified that Appellant once removed two vibrators from a dresser drawer. He placed them on the victim's legs and explained that it was supposed to make her feel good. He then removed the victim's pants and rubbed the objects between her vagina and pushed them on her clitoris. When asked if the objects penetrated her vagina, the victim responded, "they went in between the lips."

[Appellant] would regularly remove the victim's pants. In one episode he made the victim sit on top of his face and then placed his tongue in her vagina. Once, [Appellant] made the victim bend over on all fours while he removed her pants. He then placed his finger into the victim's anus. The act was extremely painful for the victim, who pulled away and ran to the bathroom. The victim was frightened when the event caused a "mucousy" discharge. [Appellant] laughed and told the victim that it would be "okay."

[Appellant] also forced the victim to perform oral sex on him. The victim recalled gagging and pulling away. These sexual assaults occurred almost every time the victim was at [Appellant's] residence. On another occasion, [Appellant] made the victim [lie] down on the bed, while he put his penis in between her thighs and then ejaculated. [Appellant's] semen contacted the victim's pants and thighs. Once, while sitting by the pool, [Appellant] placed his fingers in the victim's vagina. The victim recalled occasions where [she] and Appellant would be sitting on the couch while he would touch her vagina above her clothes or pinch her nipples.

The victim also testified that on one occasion [Appellant] removed the victim's pants, force her to lie on the bed, and placed his penis between the lips of her vagina. [Appellant] ejaculated on the victim's legs and vagina. [Appellant] once inserted his penis into the victim's anus. The victim was subjected to extreme pain and stated that it "felt like I had been ripped." She ran to the bathroom and observed spots of blood on the toilet paper used to wipe the area.

Because of the continuous systemic abuse, the victim testified that the acts were "kind of like a normal thing, like I was kind of used to it by then. [Appellant] always told me if I would ever tell anybody, he would go to jail for a long time. He was like my best friend, so I didn't really want him to leave."

The victim also explained that [Appellant] would tell her stories of his previous sexual encounters. She recalled that he once took her to a video rental business and rented a pornographic video tape. The victim waited in the vehicle, while [Appellant] "ran" into the store, acquired the tape, and then ran back to the vehicle. At his residence, he and the victim watched the video. He provided wine to the victim and encouraged her to drink it, which she did on one occasion. He also provided cigarettes to the victim and encouraged her to smoke them.

After a family dispute in 2005 [Appellant] and his family moved out of the residence when the victim was around [12] years old. Because the two families no longer interacted. The abuse ceased. The victim did not come forward at that time, because she did not want to cause more problems or fighting.

However, the victim ultimately came forward with her abuse in the summer of 2012. She had spoken with a close friend who encouraged her to disclose the abuse. The victim was concerned, because her cousin had two young children, which she believed resided in the same home as [Appellant]. With the encouragement from her friends,

4

the victim told her mother. She later went to the Charleroi Police
Department to report her abuse.

The victim's mother corroborated that between the years of 2003 and
2005 [she] and her husband had busy employment schedules and
relied on [Appellant] and his wife to babysit their children. The victim
had explained to her mother that she had been sexually assaulted for a
period of time between the ages of nine and [12] years old. During
that time, the victim's temper tantrums prompted mother and child to
visit a medical doctor. Near the end of the two families' relationship,
the victim told her mother that she no longer wanted to go to
[Appellant's] home, but she did not expand on her reasons.

The final witness was Detective Lieutenant Eric Porter. [Lieutenant]
Porter had been a member of the Charleroi Police Department for
over [15] years. The victim was interviewed by [Lieutenant] Porter
and a criminal complaint was prepared. Due to the length of time
between the abuse and its reporting, there was no attempt to collect
any physical evidence by means of a rape kit or other physical
medical examination. He testified that it was common for minor
children to not come forward for a long period of time…

Appellant did not testify or present any exhibits or witnesses on his
behalf. On September 17, 2013, the jury found Appellant guilty on all
counts. (Memorandum of 10/12/2017 at pp. 1-5).

Petitioner's contentions here concern the alleged ineffectiveness of trial counsel.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The <u>Strickland</u> test is conjunctive

5

and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Graham's first argument is that "trial counsel's failure to prepare and present a defense resulted in petitioner's wrongful conviction of crimes he is actually innocent of." Specifically, in his brief Graham contends that counsel was ineffective in failing to secure a photograph of the residence which was so small that he could not have assaulted the victim while the other three adults were present; in failing to subpoena Michael Jampedro who would have testified that petitioner never babysat for the victim and never observed the victim leaving Graham's room or the laundry room; failing to discover impeachment evidence from Ray Lyn Halinka, Jampedro's live-in girlfriend; failing to subpoena Dawn Ann Graham, Vicki Tuman, Jamie Clark who would have verified that petitioner never babysat for the victim; failed to interview and subpoena neighbors who would have testified that petitioner left for work early in the morning and that they never observed the victim during the daytime with the petitioner; failed to secure employment schedules which would have demonstrated that the petitioner was scheduled to work at the time of the alleged assaults and that all of these individuals would cast doubt on the credibility of the victim. (ECF No. 1-3). These issues were raised in Graham's petition for post-conviction relief executed on September 20, 2015 which is found in the state court records.

In reliance of the post-conviction court's opinion, the Superior Court dismissed these claims as meritless. We too, view these claims as meritless, since no one could testify that they were with the petitioner at all times and that he could not have committed these offenses. For this reason, counsel cannot be deemed to have been ineffective for failing to raise meritless issues. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010).

Petitioner's second claim is that counsel was ineffective in her cross-examination of the victim. Specifically, he argues that as a result of counsel's failure to investigate potential alibi and character witness, she only attempted to impeach the credibility of the victim and that that cross-examination was "very poor and deficient." (ECF No. 4 at pp.29-30).

Counsel's alleged failure to investigate potential alibi and character witness is essentially similar to his first argument and of no merit since nobody could testify about what activities the petitioner engaged in 24 hours a day.

He next contends that counsel's cross-examination of the victim was inadequate. At the trial the victim was 19 years old and she testified as to the sexual abuse she experienced at the hands of the petitioner which occurred when she was between the ages of nine and twelve. (TT. 9/16/13 pp. 34-73). The cross-examination of the victim was designed to bring into question her credibility (Id. at pp. 74-95). In her closing, defense counsel argued credibility to the jury in light of the passage of time and inconsistencies in the victim's testimony (Id. at pp. 138-145). In light of the fact that the only relevant evidence could only be presented by the victim, the only conceivable defense strategy was to tactfully attack her credibility. As such this claim does not provide a basis for relief. Rolan v. Vaughn, supra.

Graham's final claim is that trial counsel was ineffective in failing to object to the prosecutor's misconduct. Specifically, he contends that counsel was ineffective by failing to object to the prosecutor's opening wherein she stated that she was an Assistant District Attorney specializing in the prosecution of individuals charged with sexual abuse of children; that sexual abuse charges are different from other criminal charges in that often there is no physical evidence nor eyewitnesses; that the testimony of the victim, if believed was adequate to sustain a conviction, and that the victim in this case "is to be believed." (ECF No.4 pp.40-41). In her closing argument, the prosecutor compared the delay in informing in this case with the well-publicized delays in coming forward with allegations of sexual abuse by priests and the Penn State scandal. In addition, she commented on the credibility of the victim. (Id. at pp. 47-49).

In reviewing these claims, the Superior Court adopted the post-conviction court's opinion of July 21, 2016 (pp.4-5). In that opinion, the court wrote that in her opening as well as her closing the prosecutor while attesting to the credibility of the victim also told the jury that the court would instruct it in determining the credibility of witnesses and that the references to other sexual abuse cases was an appeal to the jury's common sense and experience in accounting for the victim's delay in coming forward with her allegations.

In her initial jury instructions, the trial court informed the jury that "statements made by counsel do not constitute evidence" and "the opening statements as with other statements made by counsel do not constitute evidence." (TT. 9/16/13 pp.10, 16). It is presumed that the jury followed these instructions. Richardson v. Marsh, 481 U.S. 200 (1987). There is nothing in the record to dispel this conclusion.

Because the petitioner has failed to demonstrate that his conviction was secured in any manner contrary to the laws of the United States nor involved an unreasonable application of those determinations, he is not entitled to relief here. Accordingly, the petition of Paul R. Graham for a writ of habeas corpus will be dismissed and a certificate of appealability will be denied.

An appropriate Order will be entered.

Filed: May 2, 2019                                    s/ Robert C. Mitchell
                                                      United States Magistrate Judge